UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>ANGEL REYES,<br><br>Defendant. | Case No. 24-cr-00282-JSC-1<br><br>**ORDER RE MOTION TO SUPPRESS AND REQUEST FOR EVIDENTIARY HEARING**<br><br>Re: Dkt. No. 60 |

Defendant Angel Reyes moves to suppress tangible evidence, observations and statements he contends were obtained in violation of the Fourth Amendment. (Dkt. No. 60.) Having considered the parties' briefs, evidence, and the relevant legal authority, and having had the benefit of oral argument on October 2, 2024, the Court DENIES the motion to suppress.

## BACKGROUND

On November 23, 2023, San Francisco Police Officers Chavarin-Rubio, Solorzano, O'Keefe, and Custodio were conducting narcotic surveillance near the intersection of Ellis and Hyde streets in San Francisco's Tenderloin District. (Dkt. No. 60-2 at 8.)[1] The area was "a focal point for narcotics-related enforcement during the daytime in 2023" due to complaints received from local citizens and building representatives. (Dkt. No 80-1 ¶ 7.) During the month of November 2023, "the SFPD arrested approximately 92 narcotics dealers, and 54 narcotics users in the Tenderloin and SOMA neighborhoods." (*Id.* ¶ 4.)

At about 1:18 p.m., Officer Chavarin-Rubio observed Mr. Reyes "holding a clear plastic baggie containing a light-colored suspected narcotic" while conversing with an unknown

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  individual. (Dkt. No. 60-2 at 9.) After the unknown individual gave Mr. Reyes cash, Mr. Reyes
2  reached into the clear plastic baggie and gave the individual "an unknown amount of the light-
3  colored suspected narcotic." (*Id.*) The unknown individual walked away. (*Id.*)

4      Believing Mr. Reyes "had conducted an illegal street level narcotics transaction," Officer
5  Chavarin-Rubio pointed out Mr. Reyes to his fellow officers. (*Id.*) They approached Mr. Reyes in
6  their unmarked police car, which Officer Chavarin-Rubio reports is "well known throughout the
7  Tenderloin District amongst narcotic traffickers" because "it has been used in numerous narcotics
8  operations." (*Id.* at 8-9.) Mr. Reyes "began to display signs of hypervigilance, rapidly looking at
9  [the officers] then in multiple directions"—behavior Officer Chavarin-Rubio reported he
10 recognized as "consistent with subjects engaged in criminal activity." (*Id.*) As Mr. Reyes walked
11 away, he gave a full white plastic bag to another individual, later identified as Denis Sequeira-
12 Sanabra. (*Id.*).

13     At that point, the officers exited the vehicle. (*Id.* at 10.) Officer Solorzano placed Mr.
14 Reyes under arrest. (*Id.*) He removed the backpack Mr. Reyes was wearing and placed Mr.
15 Reyes, who was initially resistant, in handcuffs. (Dkt. No 80-1 at 39.) Officer Solorzano walked
16 Mr. Reyes to the Tenderloin Station. (*Id.* at 37.) There, Officer Solorzano searched Mr. Reyes's
17 person and seized plastic bags containing suspected base cocaine and fentanyl and cash. (Dkt. No.
18 81-1 at 39.) Officer Solorzano also searched Mr. Reyes's backpack and "seized two plastic sacks
19 of suspected fentanyl and more US currency." (*Id.*)

## DISCUSSION

21     Mr. Reyes moves to suppress tangible evidence, observations and statements obtained (1)
22 during and following his warrantless arrest, and (2) from the warrantless search of his person and
23 backpack. Mr. Reyes also requests an evidentiary hearing.

### I. ARREST

25     The Fourth Amendment protects "[t]he right of the people to be secure in their persons,
26 houses, papers, and effects, against unreasonable searches and seizures." "Because arrests are
27 'seizures' of 'persons,' they must be reasonable under the circumstances." *D.C. v. Wesby*, 583
28 U.S. 48, 56 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe

that the suspect committed a crime in the officer's presence." *Id.* "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56-57 (internal quotation marks omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). "Probable cause is not a high bar." 583 U.S. at 57 (internal quotation marks omitted).

In this case, there was probable cause to arrest Mr. Reyes. In an area "known for open air drug dealing and usage" where police arrested over approximately 92 narcotics dealers and 54 narcotics users that month alone, (Dkt. No. 80-1 ¶¶ 4, 7), Mr. Reyes handed a bag containing a light-colored substance to an individual in exchange for cash. Further, when the officers approached Mr. Reyes in an unmarked vehicle, Mr. Reyes "began to display signs of hypervigilance," "rapidly walk[ed] away from the area," and handed a full white plastic bag to another individual. (Dkt. No. 60-2 at 8-9.)

Given the totality of circumstances, an objectively reasonable police officer would conclude Mr. Reyes was committing a crime. Thus, there was probable cause to arrest Mr. Reyes. *See, e.g.*, *United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir. 1993) (finding probable cause where officer saw defendant "holding a meth pipe containing white residue"); *Hollyfield v. United States*, 407 F.2d 1326, 1326 (9th Cir. 1969) (finding probable cause for arrest when marijuana smoking paraphernalia was in plain view); *United States v. Willis*, 163 F. App'x 562, 563 (9th Cir. 2006) (finding probable cause to arrest when "a veteran police officer with substantial experience dealing with drug-related offenses … saw [the defendant] acting nervously in response to the marked patrol car in a high-vice neighborhood frequently used for street-level drug trade . . . interacting with known drug dealers, trying to distance himself from the officers, [and] apparently attempting to ditch the bag once he believed he was out of sight"); *United States v. Svarda*, No. 3:20-CR-00329-JD-2, 2021 WL 4951451, at *4 (N.D. Cal. Oct. 25, 2021) (finding probable cause where experienced officer "saw a baggie of white powder in plain view on the floor of the car,

3

which he concluded could be cocaine").

Mr. Reyes contends "an individual's presence in a high-crime area, by itself, is not enough to support the particularized suspicion of criminal activity necessary." (Dkt. No. 89 at 4.) True, but it was not just Mr. Reyes's presence in an area known for narcotic sales that established probable cause. It was Mr. Reyes's *conduct* in that area: he passed a light-colored substance the experienced officer suspected was illegal narcotics to another individual in exchange for cash.[2] From these facts, "a prudent person would have concluded that there was a fair probability that [Mr. Reyes] had committed a crime." *Pannell*, 28 F. App'x at 698.

## II. SEARCH OF MR. REYES'S PERSON AND BACKBACK

Mr. Reyes moves to suppress the evidence obtained from the searches of his person and backpack. Because it is undisputed the officer did not have a warrant, the search was unconstitutional unless it "falls within certain established and well-defined exceptions to the warrant clause." *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (cleaned up). "The government bears the burden of proving … an exception to the warrant requirement." *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

### A. Search Incident to Arrest

The government first asserts the searches of Mr. Reyes's person and backpack were valid searches incident to arrest. This exception "allows an officer to search 'the arrestee's person and the area within his immediate control,' defined as 'the area from within which he might gain possession of a weapon or destructible evidence.'" *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted)). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

The government presents no evidence officer safety or evidence preservation justified

---

[2] Officer Chavarin-Rubio's incident report describes the training and experience underlying his conclusion the substance was an illegal narcotic. (Dkt. No. 80-1 (describing participation in various courses and training; conversations with narcotics traffickers and users; assistance with numerous narcotics related arrests, investigations, and operations; qualification as an expert in the identification and recognition of possession of fentanyl, methamphetamine, and other drugs; and assistance as an undercover officer buying illegal narcotics).)

searching Mr. Reyes's person and backpack at the Tenderloin Station. Moreover, a search incident to arrest must "be spatially and temporally incident to the arrest." *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014). That was not the case here. Officer Solorzano arrested Mr. Reyes and walked him back to the Tenderloin Station, where he conducted the search of Mr. Reyes's backpack and person. (Dkt. No. 80-1 at 39.) The arrival at the Tenderloin Station is an intervening event separating the search from the arrest. *See Camou*, 773 F.3d at 938 (to determine whether a search is "roughly contemporaneous with the arrest," the focus is on "whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former").

The government's reliance on *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015) is unpersuasive. In *Cook*, the Ninth Circuit found a valid search incident to arrest when the defendant was "face down on the ground with his hands cuffed behind his back." *Id.* The court reasoned the "agents' safety concerns were objectively reasonable" because the search took place in front of a house associated with the defendant's co-conspirator and a crowd had gathered, "heighten[ing] the agents' reasonable fear that a bystander or additional unidentified co-conspirator might intervene." *Id.* at 1200. In Mr. Reyes's case, in contrast, the search occurred at the Tenderloin Station. (Dkt. No. 80-1 at 39.) The government has not established any safety concerns at the station were objectively reasonable to justify a search incident to arrest.

### B. Inevitable Discovery Doctrine

The government next asserts that even if the search of Mr. Reyes's person and backpack was improper, suppression is unwarranted under the inevitable discovery doctrine, which is an exception to the exclusionary rule. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). For the exception to apply, the government "must show by a preponderance of the evidence that the contraband or other material seized would have been discovered inevitably by lawful means." *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

The government has met its burden. Mr. Reyes was booked. (Dkt. No. 80-1 at 12.) The San Francisco Police Department's Booking Detention Manual describes the booking search

process:

> Most bookings at a district station require only a booking search, which **includes a pat down and a thorough search of the prisoner's clothing. The arrestee's pockets are emptied and items are placed on the booking counter; containers are inspected.** The purpose of a booking search is to inventory an arrestee's property and ensure that no dangerous objects or contraband are allowed into the holding facility.

(Dkt. No. 80-1 at 74 (emphasis added).) Officer Solorzano attests that pursuant to this policy, he "would have fully searched Reyes' person and backpack, and seized any evidence contained therein." (Dkt. No. 80-1.) San Francisco's policy is reasonable under the Fourth Amendment. *See Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures."). Thus, the government has demonstrated it would have lawfully discovered the evidence it seized from Mr. Reyes's person and backpack.

Mr. Reyes argues the policy did not authorize the backpack search. He reads the policy language stating "containers are inspected" to mean "a container such as a pack of cigarettes or a wallet . . . . Obviously, a backpack in general is not such a container." (Dkt. No. 89-1 at 11.) But one purpose of the booking search is to inventory the "arrestee's property," (Dkt. No. 80-1 at 74), and Mr. Reyes's backpack was part of his property. If the San Francisco Police Department's policy did not permit inventorying containers such as backpacks, the policy would not serve a recognized purpose. As the Supreme Court observed, "[i]t is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the stationhouse." *Lafayette*, 462 U.S. at 646. "A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." *Id.*

Mr. Reyes argues "even if an inventory search were authorized by policy, there is no evidence SFPD actually followed its own inventory policy." (Dkt. No. 89 at 11.) But the government is not arguing Officer Solorzano conducted an inventory search. (*See* Dkt. No. 80-1

1  (Officer Solorzano's incident report describing an "arrest search" of Mr. Reyes at the station).)
2  Rather, in invoking the inevitable discovery doctrine, the government argues officers "would have
3  fully searched Reyes' person and backpack" as "part of the standard SFPD procedure for
4  processing and booking arrestees" and thus would have discovered the evidence seized from his
5  backpack. (Dkt. No. 80-1 at 37.) So, contrary to Mr. Reyes's assertion, the government was not
6  required to submit as evidence a booking inventory to satisfy its burden.

7  In sum, the government has established by a preponderance of the evidence that Mr.
8  Reyes's person and backpack would have been searched after booking as part of a lawful
9  inventory search. So, as it is inevitable the evidence in his backpack and on his person would
10  have been discovered, suppression is not warranted.

### III.     EVIDENTIARY HEARING

Mr. Reyes asserts that "should the Court find there are contested issues of fact, then the Court should hold an evidentiary hearing." (Dkt. No. 60 at 7); *see United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995) (an evidentiary hearing is required "when the moving papers . . . show that there are contested issues of fact relating to the lawfulness of a search"). Here, there are no contested issues of fact. In his reply, Mr. Reyes identifies the following facts as necessitating an evidentiary hearing: "the timing of the search of the backpack at the Tenderloin station, the meaning of the SFPD policies relied upon by the government, and whether they were followed." (Dkt. No. 89 at 13.) Because the Court concludes there was no valid search incident to arrest, the timing of the backpack search is irrelevant. And, as described above, under the inevitable discovery doctrine, the inquiry is not whether Officer Solorzano followed the inventory policy but whether that policy would have led to the discovery of the evidence seized. The government met its burden, and Mr. Reyes has not alleged facts to the contrary. *See United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

The Court thus DENIES Mr. Reyes's request for an evidentiary hearing.

## CONCLUSION

For the reasons discussed above, Mr. Reyes's motion to suppress is DENIED.

This Order disposes of Docket No. 60.

**IT IS SO ORDERED.**

Dated: October 3, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge